## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| | § | |
| **ATLAS GLOBAL TECHNOLOGIES** | § | **Civil Action No. 6:21-cv-1217** |
| **LLC** | § | |
| | § | |
| **Plaintiff,** | § | **Jury Trial Requested** |
| | § | |
| **v.** | § | |
| | § | |
| **ONEPLUS        TECHNOLOGY** | § | |
| **(SHENZHEN) CO., LTD.;** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Atlas Global Technologies LLC ("Atlas"), for its Complaint against Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus"), requests a trial by jury, and alleges as follows upon actual knowledge with respect to itself and its own acts and upon information and belief as to all other matters:

## NAUTRE OF THE ACTION

1. This is an action for patent infringement brought by Atlas as the owner of the patents asserted in this Complaint. Atlas alleges that OnePlus infringes U.S. Patent Nos. 9,763,259 ("the '259 Patent"); 9,825,738 ("the '738 Patent"); 9,848,442 ("the '442 Patent"); 9,912,513 ("the '513 Patent"); 9,917,679 ("the '679 Patent"); 10,020,919 ("the '919 Patent"); 10,153,886 ("the '886 Patent"); and 10,756,851 ("the '851 Patent") (collectively, the "Asserted Patents").

2. Atlas alleges that OnePlus both directly and indirectly infringes each of the Asserted Patents by making, using, offering for sale, selling and/or importing the Accused Products described below, in the United States without a license to do so. Atlas further alleges that OnePlus induces infringement by other third parties through their use of the OnePlus Accused Products as directed and instructed by OnePlus. Atlas seeks damages and other compensatory relief for OnePlus' prior and continued infringement of the Asserted Patents.

## THE PARTIES

3. Atlas is a limited liability company organized under the laws of Texas with its principal place of business at 4413 Spicewood Springs Rd., Suite 101, Austin, TX 78759.

4. Atlas is the assignee and owner of the Asserted Patents through assignment on February 19, 2021, from Newracom, Inc., ("Newracom") to Atlas. Newracom was the original owner of the Asserted Patents though assignment from the named inventors.

5. On information and belief, defendant OnePlus Technology (Shenzhen) Co., Ltd. is a limited company organized under the laws of the People's Republic of China ("PRC" or "China") with its principal place of business at 18F, Tairan Building, Block C, Tairan 8th Road, Chegongmiao, Futian District Shenzhen, Guangdong, 518040, China.

6.   OnePlus launched its first device in North America in 2014 and on its website represents that "[e]nsuring accessibility to the best features and specs possible is the foundation OnePlus is built on." *See* https://www.oneplus.com/brand?from=head (last visited Nov. 17, 2021). On its website, OnePlus states that it continues "to deliver on our promise of providing uncompromised value to consumers" in North America. *Id.*

7.   On information and belief, OnePlus is engaged in research and development, manufacturing, importation, distribution, sales, and related technical services for wireless devices, including particularly Wi-Fi 6 compliant devices. OnePlus identifies its Wi-Fi 6 products as including at least the OnePlus 8, OnePlus 8T, OnePlus 9, and OnePlus 9 Pro. https://www.oneplus.com/8/specs;                               https://www.oneplus.com/8t/specs; https://www.oneplus.com/9/specs;    https://www.oneplus.com/9-pro/specs.    These    OnePlus products are made outside the United States of America and then are imported into the United States, distributed, and sold to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners. *See* https://www.oneplus.com/store?from=head (last visited Nov. 17, 2021); https://www.oneplus.com/oneplus-9 (same) (identifying third party retailers). Those sales occur in the United States, and throughout Texas, including in this District.

## JURISDICTION AND VENUE

8.   This is an action arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.   This Court has personal jurisdiction over OnePlus. Atlas is informed and believes, and on that basis alleges, that OnePlus conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States. OnePlus has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. OnePlus regularly sells (either directly or indirectly), its products within this District. For example, OnePlus has placed and continues to place infringing products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being

and will continue to be sold in this Judicial District and the State of Texas. OnePlus is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and pervasive business in this State and Judicial District, including its infringing activities alleged herein, from which OnePlus derives substantial revenue from goods sold to Texas residents and consumers.

10. Upon information and belief, OnePlus is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, based on its substantial business in this State and judicial district, including: (1) its infringing activities, as alleged herein, by which Defendants purposefully avail itself of the privilege of conducting its business activities in this State and this Judicial District and, thus, submits itself to the jurisdiction of this Court; and (2) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this Judicial District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported to and targeting Texas residents and residents of this Judicial District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. *See* https://www.oneplus.com/store?from=head (last visited Nov. 17, 2021); https://www.oneplus.com/oneplus-9 (same) (identifying third party retailers). Such a presence furthers the development, design, manufacture, importation, distribution, sale, and use (including by inducement) of infringing OnePlus Products in Texas, including in this District. For example, OnePlus is the applicant for FCC registrations for the sale and use of OnePlus Products in the U.S., including being identified on labels as the designing party. *See, e.g.*, https://fccid.io/2ABZ2-EF14A/Label/LE2127-Label-5126430 (providing a copy of the label for OnePlus 9 Pro 5G).

11. This Court has personal jurisdiction over OnePlus, directly and/or through the activities of OnePlus intermediaries, agents, related entities, distributors, importers, customers, subsidiaries, and/or consumers. Through direction and control of these various entities, OnePlus has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that

4

personal jurisdiction over OnePlus would not offend traditional notions of fair play and substantial justice.

12. On information and belief, directly via its agents and distribution partners, retailers (including national retailers), reseller partners, solution partners, brand ambassadors, and other service providers in the U.S., OnePlus has placed and continues to place infringing OnePlus Wi-Fi Products into the U.S. stream of commerce. OnePlus has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this Judicial District and the State of Texas. *See Litecubes, LLC v. Northern Light Products, Inc*., 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

13. OnePlus utilizes established distribution channels to distribute, market, offer for sale, sell, service, and warrant infringing products directly to consumers and other users in the U.S., including providing links via its website to online stores, retailers, resellers, distributors, and solution partners offering such products and related services for sale. *See* https://www.oneplus.com/oneplus-9 (last visited Nov. 17, 2021). Such OnePlus Products have been sold in retail stores, both brick and mortar and online, within this Judicial District and in Texas, including well-known and widely used retailers including Amazon.com, BestBuy, and T-Mobile. For example, the OnePlus 9 (which supports Wi-Fi 6 operation) is available for purchase at various retail stores in this District, including the T-Mobile, Best Buy, and Walmart store locations in Waco, Temple, and Killeen:



14. Accused Products, including the OnePlus 9 and OnePlus 9 Pro, can be purchased from Best Buy in Waco:



https://www.bestbuy.com/site/searchpage.jsp?st=oneplus&_dyncharset=UTF-8&_dynSessConf=&id=pcat17071&type=page&sc=Global&cp=1&nrp=&sp=&qp=&list=n&af=true&iht=y&usc=All+Categories&ks=960&keys=keys.

15. Accused Products, including the OnePlus 9 and OnePlus 9 Pro, can be purchased from T-Mobile in Waco:



https://www.t-mobile.com/stores/pl/t-mobile-waco-tx-76710-8941?brand=oneplus#.

16. OnePlus also provides application software ("apps"), the "OnePlus Store App," for download and use in conjunction with and as a part of the distribution network of the OnePlus Products. These apps are available via digital distribution platforms operated by Apple Inc. and Google for download by users and execution on smartphone devices. *See, e.g.*, https://play.google.com/store/apps/details?id=com.oneplus.store (last visited Nov. 17, 2021) (offering the OnePlus Store app for download).

17. Based on OnePlus' connections and relationship with these national retailers and digital distribution platforms, OnePlus knows that Texas is a termination point of its established distribution channels, including the online and brick and mortar stores offering OnePlus Products to users in Texas. OnePlus, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 WL 1025467, at (E.D. Tex. 2009) ( "[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located").

7

18. Upon information and belief, One Plus alone and in concert with other related entities manufactures and purposefully places infringing OnePlus Products in established distribution channels in the stream of commerce, including in Texas, via distributors and reseller partners, such at least those listed on OnePlus' website. For example, OnePlus imports to Texas or through a related entity and directly sells and offers for sale infringing OnePlus Products in Texas to distributor Walmart, which has a distribution location at 9605 NW H K Dodgen Loop, Temple, TX 76504, which is in this Judicial District. *See* https://web.templechamber.com/Distributors/Walmart-Distribution-Center-6083-656 (last visited Nov. 17, 2021). Walmart offers infringing OnePlus Products for sale on its website, including for example the OnePlus 9. *See e.g.,* https://www.walmart.com/ip/New-OnePlus-9-5G-128GB-Factory-Unlocked-8GB-RAM-Smartphone-Black/211079908 (last visited Nov. 17, 2021). Via this website, OnePlus Products are offered for sale to consumers in the State of Texas.

19. These suppliers and distributors import, advertise, offer for sale and sell OnePlus Products via their own websites to U.S. consumers, including to consumers in Texas. Based on OnePlus' connections and relationships, including supply contracts and other agreements with the U.S. and Texas-based distributors and suppliers, such as at least Best Buy, OnePlus knows and has known that Texas is a termination point of the established distribution channels for infringing OnePlus Products. OnePlus, alone and in concert with related entities, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. *See Ultravision Technologies, LLC v. Holophane Europe Limited*, 2020 WL 3493626, at *5 (E.D. Tex. 2020) (finding sufficient to make a prima facie showing of personal jurisdiction allegations that "Defendants either import the products to Texas themselves or through a related entity"); *see also Bench Walk Lighting LLC v. LG Innotek Co., Ltd et al*., Civil Action No. 20-51-RGA, 2021 WL 65071, at *7-8 (D. Del., Jan. 7, 2021) (denying motion to dismiss for lack of personal jurisdiction based on the foreign defendant entering into supply contract with U.S. distributor and the distributor sold and shipped defendant's products from the U.S. to a customer in the forum state).

8

20. In the alternative, this Court has personal jurisdiction over OnePlus under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, OnePlus is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over OnePlus is consistent with the U.S. Constitution.

21. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, OnePlus is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

## THE 802.11 STANDARD

22. Wireless Local Area Networks (WLANs) have become ubiquitous with the rise of mobile telecommunication devices. These wireless networks operate using an unlicensed band of 2.4 GHz, 5 GHz, and/or 6 GHz. The operation of WLANs is standardized by the Institute of Electrical and Electronics Engineers ("IEEE") Part 11 under the name of "Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications," also known as "Wi-Fi."

23. After an original Wi-Fi standard was published in 1999, new standard versions have been published by amendments. For example, the IEEE standard 802.11a (IEEE Std 802.11a-1999) was published in 1999, the IEEE standard 802.11b (IEEE Std 802.11b-1999) was published in 1999, and the IEEE standard 802.11g (IEEE Std 802.11g-2003) was published in 2003. Subsequently, the IEEE standard 802.11n (IEEE Std 802.11n-2009) for enhancements for higher throughput (HT) was published in 2009, and the IEEE standard 802.11 ac (IEEE 802.11 ac-2013) for enhancements for very high throughput (VHT) was published in 2013. These prior versions of the 802.11 standard are called legacy standards.

24. As wireless devices proliferated, the need arose to improve the performance of Wi-Fi in high-density scenarios. To address this issue, an IEEE task group began working on a new standard high efficiency (HE) WLAN to enhance the throughput-per-area of Wi-Fi. This standard became known as 802.11ax, commonly called "Wi-Fi 6." The first draft of the 802.11ax Standard was

9

published in March 2016. The IEEE approved the final version of the 802.11ax-2021 Standard on February 9, 2021.

Wi-Fi 6 provides numerous benefits over previous Wi-Fi standards, which the industry has recognized and actively promoted. For example, Qualcomm has stated that Wi-Fi 6 provides "up to 4x increase in capacity," "higher efficiency," and "improved coverage & performance" over previous Wi-Fi standards. https://www.qualcomm.com/media/documents/files/802-11ax-wi-fi-with-unprecedented-capacity.pdf. Intel has stated that Wi-Fi 6 offers 9.6 Gbps of maximum throughput, whereas Wi-Fi 5 offered a maximum throughput of 3.5 Gbps. https://www.intel.com/content/www/us/en/gaming/resources/wifi-6.html. Intel has also stated that Wi-Fi 6 can result in up to 75% less latency. *Id*. Cisco has stated that Wi-Fi 6 "lets access points support more clients in dense environments and provide[s] a better experience for typical wireless LAN networks." https://www.cisco.com/c/en/us/products/collateral/wireless/white-paper-c11-740788.html. Similarly, Broadcom has stated that Wi-Fi 6 will allow devices to "work 6X faster," "deliver up to 7X better battery life," and "expand the Wi-Fi range up to 4X." https://docs.broadcom.com/doc/80211ax-WP. Broadcom touts the advantages of 802.11ax relative to prior versions of the Standard, noting "While previous Wi-Fi standards were designed to maximize peak speeds for a limited number of devices and users, this standard improves user experience in dense environments by maximizing average speeds for a large number of devices while preserving the benefits of legacy Wi-Fi technologies, such as backwards compatibility and low cost." *Id*. According to Broadcom, IEEE 802.11ax achieves these advancements through various primary features, including Orthogonal Frequency Division Multiplexing Multiple Access (OFDMA), which increases spectrum capacity by slicing channels into smaller chunks, which together host multiple devices simultaneously; Multi-User MIMO (MU-MIMO) technology to increase channel capacity when simultaneously servicing multiple devices using the same frequency chunks; Smarter access points capable of providing improved outdoor connectivity through longer guard intervals. *Id*. Among the various improvements obtained from 802.11ax,

outdoor devices that implement 802.11ax can obtain increased throughput of 50% relative to prior versions of the Standard. *Id.*

## NEWRACOM

25. The Asserted Patents were all invented and developed by engineers at Newracom, a leader and pioneer in wireless communication technology. Newracom was founded in 2014 by a group of 28 former employees of the Electronics & Telecommunications Research Institute ("ETRI"), a research institution funded by the government of Korea.

26. Newracom was a major contributor to the 802.11ax-2021 Standard, providing numerous technical contributions to that Standard which have proven to be highly beneficial in improving the bandwidth of wireless transmissions, while minimizing latency among the devices connected to the wireless local area network. Notably, Newracom has been acknowledged as one of the leaders in both number of technical submissions and the number of submissions ultimately adopted by the 802.11ax Task Group. According to an IAM Industry Report dated April 25, 2018, Newracom was recognized as the world's fourth most active technical contributor to the 802.11ax Standard, behind only Qualcomm, Intel, and Huawei. *See* https://www.iam-media.com/ieees-empirical-record-success-and-innovation-following-patent-policy-updates. The contributions provided by Newracom have led to at least 188 United States patents relating to the 802.11ax Standard.

## ONEPLUS' KNOWLEDGE OF NEWRACOM'S PATENTS

27. OnePlus has known that Newracom possessed patents relating to the 802.11ax Standard since at least March 11, 2015. On that date, Newracom submitted a Letter of Assurance for Essential Patent Claims ("LOA") to the IEEE. In the LOA, Newracom stated that it "may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims." At a minimum, OnePlus was aware of the Asserted Patents as of the date of filing this Complaint.

## ONEPLUS' USE OF THE PATENTED TECHNOLOGY

28. On information and belief, OnePlus makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States various devices with Wi-Fi capabilities. For example, OnePlus makes, uses, and sells phones that support Wi-Fi 6. OnePlus' devices with Wi-Fi 6 capability include software and hardware on the devices that implement the inventions claimed in the Asserted Patents.

29. Upon information and belief, a significant portion of the operating revenue of OnePlus is derived from the manufacture, distribute, sale, and use of mobile phones, which are imported into the United States, distributed, and ultimately sold to and used by U.S. consumers. For example, OnePlus' global website touts that it "has been building a fanatical customer base in North America. Seeing exponential growth over this short time span and becoming a Top-5 Flagship OEM by sales volume* in 2019, OnePlus continues to set industry standards and is proud to have you along the journey." *See* https://www.oneplus.com/brand?from=foot (last visited Nov. 19, 2021) ("North America Presence").

30. The Accused Products include all OnePlus products that comply with the 802.11ax-2021 Standard, including but not limited to the following OnePlus products:

| Products | |
|---|---|
| IN2013 | IN2015 |
| IN2017 | IN2019 |
| IN2023 | IN2025 |
| KB2003 | KB2005 |
| KB2007 | OnePlus 8 |
| OnePlus 8T | OnePlus 9 |
| OnePlus 9 Pro | |

## FIRST COUNT

### (Infringement of U.S. Patent No. 9,763,259)

31. Atlas incorporates by reference the allegations set forth in Paragraphs 1-30 of this Complaint as though fully set forth herein.

32. The '259 Patent, entitled "Sounding Method," was duly and lawfully issued on September 12, 2017. Atlas is the owner of all right, title, and interest in the '259 Patent. The '259 Patent was filed on September 22, 2015 as Application No. 14/862,078 and claims the benefit of Korean Patent Application No. 10-2015-0116576, filed on August 19, 2015, and U.S. Provisional Application No. 62/054,270, filed on September 23, 2014. *See* https://patentimages.storage.googleapis.com/ff/7b/3b/738dfc1959ff2d/US9763259.pdf.

33. The '259 Patent relates to multi-user ("MU") sounding and feedback in a wireless network. MU transmission requires channel information for the devices to access their subchannels that have been assigned by an Access Point ("AP"). The Accused Products support and implement a sounding method as a non-AP station device on the wireless network that receives wireless communications from an AP. The Accused Products are configured to receive a null data packet announcement ("NDPA") frame from a transmitting device.

34. The Accused Products are configured to then receive a null data packet ("NDP") frame from the AP after receiving the NDPA frame. In response, the Accused Products are designed to transmit to the AP a feedback frame including subchannel information measured on a first subchannel after receiving the NDP frame. The first subchannel is a subchannel that has been allocated to the first receiving device by an AP from among a plurality of subchannels through which signal transmissions may occur. The Accused Products are designed such that, when transmitting the feedback frame, the non-AP station device will transmit the feedback frame to the AP while a second feedback frame including subchannel information measured on a second subchannel is transmitted simultaneously to the AP by a second non-AP station device, the second subchannel being a subchannel that has been allocated to the second receiving device among the plurality of subchannels by the AP.

35. OnePlus directly infringes the '259 Patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States products

that directly infringe the '259 Patent, including the above identified Accused Products. The Accused Products infringe at least claim 1 of the '259 Patent by practicing the 802.11ax Standard, as indicated in OnePlus' product specifications for the Accused Products. The OnePlus Accused Products operate as Station devices that are designed by OnePlus and operate consistent with the requirements of 802.11ax. This includes the ability to generate and send multi-user ("MU") uplink ("UL") transmissions in response to a request by an Access Point ("AP") on the wireless network and receive MU downlink ("DL") transmissions from an AP. *See e.g.*, 802.11ax-2021 at § 26.7.3(HE Sounding Protocol) and Figures 9-61a (HE NDP Announcement frame format), 9-61b (STA info field in an HE NDP Announcement frame) and 26-8 (Example of HE TB sounding).

36. In addition to directly infringing the '259 method claims by using infringing products in the United States, OnePlus also indirectly infringes the '259 claims. Where acts constituting direct infringement of the '259 Patent may not be performed by OnePlus, such acts constituting direct infringement of the '259 Patent are performed by OnePlus' customers or end-users who act at the direction and/or control of OnePlus, with OnePlus' knowledge.

37. Atlas is informed and believes, and on that basis alleges, that OnePlus indirectly infringes at least claim 1 of the '259 Patent by active inducement in violation of 35 U.S.C. § 271(b), by at least manufacturing, supplying, distributing, selling, and/or offering for sale the Accused Products to their customers with the knowledge and intent that use of those products would constitute direct infringement of the '259 Patent. Upon information and belief, OnePlus intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, reseller partners, solution partners, consumers, and other related service providers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers

14

in the United States. *See, e.g.*, User Manuals, https://www.oneplus.com/support/manuals (last visited Nov. 19, 2021) (providing consumers access to user manuals "that will guide [consumers] through everything [they] need to know about" for the Accused Products).

38. For example, OnePlus advertises to its customers that it sells products that implement the 802.11ax Standard. *See, e.g.*, https://www.oneplus.com/9-pro/specs. OnePlus also instructs its customers on how to connect the Accused Products to Wi-Fi networks so that they may practice the 802.11ax Standard. As an example, the "OnePlus 9 Pro User Manual" assists users in connecting to a wireless network as part of the process for setting up the device. *See* OnePlus 9 Pro User Manual *available at* https://oneplussupport.s3.amazonaws.com/9+Pro+UM/OnePlus+9+Pro+User+Manual_EN.pdf. Once the Accused Products are installed, they will automatically implement the 802.11ax Standard based upon the hardware and software provided in the Accused Products. OnePlus also instructs its customers on what to do when an Accused Product "Can't Connect to a Wi-Fi Network." https://www.oneplus.com/support/answer/detail/op314.

39. OnePlus' acts of infringement have cause damage to Atlas, and Atlas is entitled to recover from OnePlus (or any successor entity to OnePlus) the damages sustained by Atlas as a result of OnePlus' wrongful acts in an amount subject to proof at trial.

## SECOND COUNT

## (Infringement of U.S. Patent No. 9,825,738)

40. Atlas incorporates by reference the allegations set forth in Paragraphs 1-39 of this Complaint as though fully set forth herein.

41. The '738 Patent, entitled "Acknowledgement Method and Multi User Transmission Method," was duly and lawfully issued on November 21, 2017. Atlas is the owner of all right, title, and interest in the '738 Patent. The '738 Patent was filed on April 3, 2015 as Application No. 14/678,724 and claims the benefit of U.S. Provisional Application No. 61/981,427, filed on April 18, 2014, and U.S. Provisional Application No. 61/975,622, filed on April 4, 2014. *See* https://patentimages.storage.googleapis.com/b4/cb/6e/1969e989e11ae4/US9825738.pdf.

42. The '738 Patent is directed to improvements related to trigger frames, which are used to solicit and schedule simultaneous transmissions from multiple user devices on a wireless local area network. The concept of trigger frames to solicit and synchronize multi-user uplink frames was first introduced into the wireless standard as part of 802.11ax, and Newracom was a key contributor to those concepts. The '738 Patent covers a method of operating a station device in a wireless network that supports both multi-user downlink transmissions and multi-user uplink transmissions. In the '738 invention embodied in Claim 9, the station device receives a physical downlink frame transmitted to a plurality of station devices as part of a downlink multi-user transmission. Included in the downlink multi-user frame is uplink setup information that is to be used by the stations when responding to the downlink multi-user frame. The setup information includes information that is common to the multiple stations joining in the uplink multi-user transmission. The setup information also includes dedicated information that is specific to each responding station. The common information includes information that is a function of a total number of space time streams to be used to perform the simultaneous transmission of the uplink frames by each of the stations participating in the uplink multi-user transmission. The station transmits an uplink frame to the access point in response to receiving the uplink setup information simultaneously with uplink frames from one or more other stations in the wireless network. After transmitting the uplink frame to the access point, the station receives an acknowledgement frame from the access point.

43. OnePlus directly infringes the '738 Patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States products that directly infringe the '738 Patent, including the above identified Accused Products. The Accused Products infringe at least claim 9 of the '738 Patent by practicing the 802.11ax Standard, as indicated in OnePlus' product specifications for the Accused Products. The OnePlus Accused Products operate as Station devices that are designed by OnePlus and operate consistent with the requirements of 802.11ax. This includes the ability to receive a MU trigger frame from an AP that includes both a common information field and a dedicated information field, and the ability to

transmit an MU uplink frame to the AP. *See e.g.*, 802.11ax-2021 at §4.3.15a (High efficiency (HE) STA; § 9.3.1.22.1 (Trigger Frame format); § 10.3.2.13.3 (Acknowledgement procedure for an UL MU transmission); § 27.3.11.10 (HE-LTF); Figure 9-64a (Trigger frame format); Figure 9-64b (Common info field format); Figure 9-64d (User Info field format); Figure 10-14b; and Figure 10-14c.

44. OnePlus also indirectly infringes at least claim 9 of the '738 Patent. Where acts constituting direct infringement of the '738 Patent may not be performed by OnePlus, such acts constituting direct infringement of the '738 Patent are performed by OnePlus' customers or end-users who act at the direction and/or control of OnePlus, with OnePlus' knowledge.

45. Atlas is informed and believes, and on that basis alleges, that OnePlus indirectly infringes at least claim 9 of the '738 Patent by active inducement in violation of 35 U.S.C. § 271(b), by at least manufacturing, supplying, distributing, selling, and/or offering for sale the Accused Products to their customers with the knowledge and intent that use of those products would constitute direct infringement of the '738 Patent. Upon information and belief, OnePlus intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, reseller partners, solution partners, consumers, and other related service providers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, User Manuals, https://www.oneplus.com/support/manuals (last visited Nov. 19, 2021) (providing consumers access to user manuals "that will guide [consumers] through everything [they] need to know about" for the Accused Products).

46. For example, OnePlus advertises to its customers that it sells products that implement the 802.11ax Standard. *See, e.g.*, https://www.oneplus.com/9-pro/specs. OnePlus also instructs its

customers on how to connect the Accused Products to Wi-Fi networks so that they may practice the 802.11ax Standard. As an example, the "OnePlus 9 Pro User Manual" assists users in connecting to a wireless network as part of the process for setting up the device. *See* OnePlus 9 Pro User Manual *available at* https://oneplussupport.s3.amazonaws.com/9+Pro/UM/OnePlus+9+Pro+User+Manual_EN.pdf. Once the Accused Products are installed, they will automatically implement the 802.11ax Standard based upon the hardware and software provided in the Accused Products. OnePlus also instructs its customers on what to do when an Accused Product "Can't Connect to a Wi-Fi Network." https://www.oneplus.com/support/answer/detail/op314.

47. Once the Accused Products are installed, they will automatically implement the 802.11ax Standard based upon the hardware and software provided in the Accused Products.

48. OnePlus' acts of infringement have cause damage to Atlas, and Atlas is entitled to recover from OnePlus (or any successor entity to OnePlus) the damages sustained by Atlas as a result of OnePlus' wrongful acts in an amount subject to proof at trial.

## THIRD COUNT

### (Infringement of U.S. Patent No. 9,848,442)

49. Atlas incorporates by reference the allegations set forth in Paragraphs 1-48 of this Complaint as though fully set forth herein.

50. The '442 Patent, entitled "Method for Transmitting and Receiving Frame in Wireless Local Area Network," was duly and lawfully issued on December 19, 2017. Atlas is the owner of all right, title, and interest in the '442 Patent. The '442 Patent was filed on November 10, 2015 as Application No. 14/937,284 and claims the benefit of U.S. Provisional Application No. 62/077,771, filed on November 10, 2014. *See* https://patentimages.storage.googleapis.com/7e/52/0f/569a3a08af772e/US9848442.pdf.

51. The '442 Patent relates to setting a physical layer ("PHY") level network allocation vector ("NAV") when receiving a high-efficiency ("HE") physical layer protocol data unit ("PPDU") and setting a medium access control ("MAC") level NAV when receiving a legacy PPDU. The

802.11ax Standard provides criteria for determining whether a received PPDU originated from a basic service set ("BSS") to which the device belongs or originated from a BSS to which the device does not belong. According to the 802.11ax Standard, when a device receives an HE PPDU, the device will set a PHY-level virtual carrier sensing using duration information included in the PHY header of the PPDU. When a device receives a legacy PPDU, the device will set a MAC-level virtual carrier sensing using duration information included in the MAC header of the PPDU. Depending on the value of the virtual carrier sensing, the device will then attempt to obtain a transmission opportunity.

52. OnePlus directly infringes the '442 Patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States products that directly infringe the '442 Patent, including the above identified Accused Products. The Accused Products infringe at least claim 8 of the '442 Patent by practicing the 802.11ax Standard, as indicated in OnePlus' product specifications for the Accused Products. The OnePlus Accused Products operate as Station devices that are designed by OnePlus and operate consistent with the requirements of 802.11ax.

53. In addition to directly infringing the '442 apparatus claims by making, selling and using infringing products in the United States, OnePlus also indirectly infringes the '442 Patent claims. Where acts constituting direct infringement of the '442 Patent may not be performed by OnePlus, such acts constituting direct infringement of the '442 Patent are performed by OnePlus' customers or end-users who act at the direction and/or control of OnePlus, with OnePlus' knowledge.

54. Atlas is informed and believes, and on that basis alleges, that OnePlus indirectly infringes at least claim 8 of the '442 Patent by active inducement in violation of 35 U.S.C. § 271(b), by at least manufacturing, supplying, distributing, selling, and/or offering for sale the Accused Products to their customers with the knowledge and intent that use of those products would constitute direct infringement of the '442 Patent. Upon information and belief, OnePlus intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, reseller partners, solution partners, consumers, and other related service providers by at

least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, User Manuals, https://www.oneplus.com/support/manuals (last visited Nov. 19, 2021) (providing consumers access to user manuals "that will guide [consumers] through everything [they] need to know about" for the Accused Products).

55. For example, OnePlus advertises to its customers that it sells products that implement the 802.11ax Standard. *See, e.g.*, https://www.oneplus.com/9-pro/specs. OnePlus also instructs its customers on how to connect the Accused Products to Wi-Fi networks so that they may practice the 802.11ax Standard. As an example, the "OnePlus 9 Pro User Manual" assists users in connecting to a wireless network as part of the process for setting up the device. *See* OnePlus 9 Pro User Manual *available at* https://oneplussupport.s3.amazonaws.com/9+Pro+UM/OnePlus+9+Pro+User+Manual_EN.pdf. Once the Accused Products are installed, they will automatically implement the 802.11ax Standard based upon the hardware and software provided in the Accused Products. OnePlus also instructs its customers on what to do when an Accused Product "Can't Connect to a Wi-Fi Network." https://www.oneplus.com/support/answer/detail/op314.

56. OnePlus' acts of infringement have cause damage to Atlas, and Atlas is entitled to recover from OnePlus (or any successor entity to OnePlus) the damages sustained by Atlas as a result of OnePlus' wrongful acts in an amount subject to proof at trial.

**FOURTH COUNT**

**(Infringement of U.S. Patent No. 9,912,513)**

57. Atlas incorporates by reference the allegations set forth in Paragraphs 1-56 of this Complaint as though fully set forth herein.

58. The '513 Patent, entitled "System and Method for Synchronization for OFDMA Transmission," was duly and lawfully issued on March 6, 2018. Atlas is the owner of all right, title, and interest in the '513 Patent. The '513 Patent was filed on July 6, 2016 as Application No. 15/203,717 as a continuation of Application No. 14/868,303, filed on September 28, 2015 (which resulted in U.S. Patent No. 9,413,581), and further claims the benefit of U.S. Provisional Application No. 62/061,503, filed on October 8, 2014. *See* https://patentimages.storage.googleapis.com/13/74/f6/7f6ce09c401f49/US9912513.pdf.

59. The '513 Patent generally relates to 802.11ax downlink ("DL") trigger frames sent by access points and received by stations that indicate the guard interval duration of the expected uplink ("UL") responsive frames sent by the stations. In MU OFDMA, stations may simultaneously transmit uplink frames where each field within an uplink frame includes: (1) a guard interval (sometimes referred to as a "cyclic prefix") and then (2) one or more symbols. But if the guard interval durations are not uniform amongst all the stations, the symbols will not be synchronized, and the access point may have greater difficulty correctly decoding the frames received from the stations. To ensure all the stations use the same guard interval duration, the access point may transmit a trigger frame with information for a guard interval ("GI") duration to be used for at least some symbols of a subsequent UL frame.

60. OnePlus directly infringes the '513 Patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States products that directly infringe the '513 Patent, including the above identified Accused Products. The Accused Products infringe at least claim 1 of the '513 Patent by practicing the 802.11ax Standard, as indicated in OnePlus' product specifications for the Accused Products. The OnePlus Accused Products operate as Station devices that are designed by OnePlus and operate consistent with the requirements of 802.11ax.

61.  In addition to directly infringing the '513 apparatus claims by making, selling and using infringing products in the United States, OnePlus also indirectly infringes the '513 Patent claims. Where acts constituting direct infringement of the '513 Patent may not be performed by OnePlus,

such acts constituting direct infringement of the '513 Patent are performed by OnePlus' customers or end-users who act at the direction and/or control of OnePlus, with OnePlus' knowledge.

62. Atlas is informed and believes, and on that basis alleges, that OnePlus indirectly infringes at least claim 1 of the '513 Patent by active inducement in violation of 35 U.S.C. § 271(b), by at least manufacturing, supplying, distributing, selling, and/or offering for sale the Accused Products to their customers with the knowledge and intent that use of those products would constitute direct infringement of the '513 Patent. Upon information and belief, OnePlus intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, reseller partners, solution partners, consumers, and other related service providers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, User Manuals, https://www.oneplus.com/support/manuals (last visited Nov. 19, 2021) (providing consumers access to user manuals "that will guide [consumers] through everything [they] need to know about" for the Accused Products).

63. For example, OnePlus advertises to its customers that it sells products that implement the 802.11ax Standard. *See, e.g.*, https://www.oneplus.com/9-pro/specs. OnePlus also instructs its customers on how to connect the Accused Products to Wi-Fi networks so that they may practice the 802.11ax Standard. As an example, the "OnePlus 9 Pro User Manual" assists users in connecting to a wireless network as part of the process for setting up the device. *See* OnePlus 9 Pro               User               Manual               *available               at* https://oneplussupport.s3.amazonaws.com/9+Pro+UM/OnePlus+9+Pro+User+Manual_EN.pdf. Once the Accused Products are installed, they will automatically implement the 802.11ax Standard based upon the hardware and software provided in the Accused Products. OnePlus also instructs

its customers on what to do when an Accused Product "Can't Connect to a Wi-Fi Network."

https://www.oneplus.com/support/answer/detail/op314.

64. OnePlus' acts of infringement have cause damage to Atlas, and Atlas is entitled to recover from OnePlus (or any successor entity to OnePlus) the damages sustained by Atlas as a result of OnePlus' wrongful acts in an amount subject to proof at trial.

### FIFTH COUNT

### (Infringement of U.S. Patent No. 9,917,679)

65. Atlas incorporates by reference the allegations set forth in Paragraphs 1-64 of this Complaint as though fully set forth herein.

66. The '679 Patent, entitled "Method and Apparatus for Transmitting Response Frame Based on Type in a High Efficiency Wireless LAN," was duly and lawfully issued on March 13, 2018. Atlas is the owner of all right, title, and interest in the '679 Patent. The '679 Patent was filed on November 3, 2015 as Application No. 14/931,753 and claims the benefit of U.S. Provisional Application No. 62/080,026, filed on November 14, 2014, and U.S. Provisional Application No. 62/074,514, filed on November 3, 2014. *See* https://patentimages.storage.googleapis.com/17/b5/81/214a1f0874d6c4/US9917679.pdf.

67. The '679 Patent generally relates to 802.11ax responsive UL transmission. The 802.11ax station receives a downlink (DL) frame from an Access Point that identifies the type of UL frame for the station to provide as an Acknowledgement. The types may be either a single-user (SU) type or a multiple-user (MU) type frame. The station transmits to the AP an uplink frame of the type specified by the AP in the DL frame. If the UL frame corresponds to a MU type, a plurality of stations transmit the UL frame simultaneously.

68. OnePlus directly infringes the '679 Patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States products that directly infringe the '679 Patent, including the above identified Accused Products. The Accused Products infringe at least claim 1of the '679 Patent by practicing the 802.11ax Standard, as indicated in OnePlus' product specifications for the Accused Products. The OnePlus Accused

Products operate as Station devices that are designed by OnePlus and operate consistent with the requirements of 802.11ax.

69. OnePlus also indirectly infringes the '679 Patent claims. Where acts constituting direct infringement of the '679 Patent may not be performed by OnePlus, such acts constituting direct infringement of the '679 Patent are performed by OnePlus' customers or end-users who act at the direction and/or control of OnePlus, with OnePlus' knowledge.

70. Atlas is informed and believes, and on that basis alleges, that OnePlus indirectly infringes at least claim 1 of the '679 Patent by active inducement in violation of 35 U.S.C. § 271(b), by at least manufacturing, supplying, distributing, selling, and/or offering for sale the Accused Products to their customers with the knowledge and intent that use of those products would constitute direct infringement of the '679 Patent. Upon information and belief, OnePlus intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, reseller partners, solution partners, consumers, and other related service providers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, User Manuals, https://www.oneplus.com/support/manuals (last visited Nov. 19, 2021) (providing consumers access to user manuals "that will guide [consumers] through everything [they] need to know about" for the Accused Products).

71. For example, OnePlus advertises to its customers that it sells products that implement the 802.11ax Standard. *See, e.g.*, https://www.oneplus.com/9-pro/specs. OnePlus also instructs its customers on how to connect the Accused Products to Wi-Fi networks so that they may practice the 802.11ax Standard. As an example, the "OnePlus 9 Pro User Manual" assists users in connecting to a wireless network as part of the process for setting up the device. *See* OnePlus 9

Pro            User            Manual            *available*            *at*
https://oneplussupport.s3.amazonaws.com/9+Pro/UM/OnePlus+9+Pro+User+Manual_EN.pdf.
Once the Accused Products are installed, they will automatically implement the 802.11ax Standard
based upon the hardware and software provided in the Accused Products. OnePlus also instructs
its customers on what to do when an Accused Product "Can't Connect to a Wi-Fi Network."
https://www.oneplus.com/support/answer/detail/op314.

72. OnePlus' acts of infringement have cause damage to Atlas, and Atlas is entitled to recover
from OnePlus (or any successor entity to OnePlus) the damages sustained by Atlas as a result of
OnePlus' wrongful acts in an amount subject to proof at trial.

## SIXTH COUNT

### (Infringement of U.S. Patent No. 10,020,919)

73. Atlas incorporates by reference the allegations set forth in Paragraphs 1-72 of this
Complaint as though fully set forth herein.

74. The '919 Patent, entitled "Protection Methods for Wireless Transmissions," was duly and
lawfully issued on July 10, 2018. Atlas is the owner of all right, title, and interest in the '919 Patent.
The '919 Patent was filed on April 25, 2017 as Application No. 15/497,094 as a continuation of
Application No. 15/291,947, filed on October 12, 2016 (which resulted in U.S. Patent No.
9,667,394), and further claims the benefit of U.S. Provisional Application No. 62/333,192, filed
on May 7, 2016, U.S. Provisional Application No. 62/333,077, filed on May 6, 2016, U.S.
Provisional Application No. 62/331,380, filed on May 3, 2016, and U.S. Provisional Application
No.      62/240,419,      filed      on      October      12,      2015.      *See*
https://patentimages.storage.googleapis.com/c3/70/58/d1b5e3ee57d660/US10020919.pdf.

75. The '919 Patent generally relates to an access point soliciting Channel State Information
("CSI") from one or more stations using a Null Data Packet Announcement (indicating which
stations should send CSI) followed by a Null Data Packet, after which either a single station
responds, or multiple stations wait for an indication they should respond (in response to a polling
or trigger frame). The '919 Patent discloses a CSI feedback procedure, also known as sounding

procedure, consists of a transmission, by the beamformer (such as an AP), of a non-data packet announcement (NDPA) transmission followed by non-data packet (NDP). In response to the NDPA transmission and the NDP, a beamformee (such as a station) transmits CSI feedback to the beamformer. The '919 Patent teaches multiple procedures for providing CS feedback, including: (1) a single user provides CSI feedback using a UL Single-User (SU) MIMO transmission, or (2) a plurality of users provide CSI feedback simultaneously using an UL MU transmission. The procedure used is indicated by a number of per-station information fields in the NDPA frame. The NDPA frame contains parameters for CSI feedback as well as list of STAs that are directed to participate in the CSI feedback process. Thus, the '919 Patent teaches a technique which supports UL MU transmission while avoiding the overhead of a trigger frame when only soliciting CSI information from a single station.

76. OnePlus directly infringes the '919 Patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States products that directly infringe the '919 Patent, including the above identified Accused Products. The Accused Products infringe at least claim 1 of the '919 Patent by practicing the 802.11ax Standard, as indicated in OnePlus' product specifications for the Accused Products. The OnePlus Accused Products operate as Station devices that are designed by OnePlus and operate consistent with the requirements of 802.11ax.

77. OnePlus also indirectly infringes the '919 Patent claims. Where acts constituting direct infringement of the '919 Patent may not be performed by OnePlus, such acts constituting direct infringement of the '919 Patent are performed by OnePlus' customers or end-users who act at the direction and/or control of OnePlus, with OnePlus' knowledge.

78. Atlas is informed and believes, and on that basis alleges, that OnePlus indirectly infringes at least claim 1 of the '919 Patent by active inducement in violation of 35 U.S.C. § 271(b), by at least manufacturing, supplying, distributing, selling, and/or offering for sale the Accused Products to their customers with the knowledge and intent that use of those products would constitute direct infringement of the '919 Patent. Upon information and belief, OnePlus intends to cause, and has

taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, reseller partners, solution partners, consumers, and other related service providers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, User Manuals, https://www.oneplus.com/support/manuals (last visited Nov. 19, 2021) (providing consumers access to user manuals "that will guide [consumers] through everything [they] need to know about" for the Accused Products).

79. For example, OnePlus advertises to its customers that it sells products that implement the 802.11ax Standard. *See, e.g.*, https://www.oneplus.com/9-pro/specs. OnePlus also instructs its customers on how to connect the Accused Products to Wi-Fi networks so that they may practice the 802.11ax Standard. As an example, the "OnePlus 9 Pro User Manual" assists users in connecting to a wireless network as part of the process for setting up the device. *See* OnePlus 9 Pro                    User                    Manual                    *available*                    *at* https://oneplussupport.s3.amazonaws.com/9+Pro+UM/OnePlus+9+Pro+User+Manual_EN.pdf. Once the Accused Products are installed, they will automatically implement the 802.11ax Standard based upon the hardware and software provided in the Accused Products. OnePlus also instructs its customers on what to do when an Accused Product "Can't Connect to a Wi-Fi Network." https://www.oneplus.com/support/answer/detail/op314.

80. OnePlus' acts of infringement have cause damage to Atlas, and Atlas is entitled to recover from OnePlus (or any successor entity to OnePlus) the damages sustained by Atlas as a result of OnePlus' wrongful acts in an amount subject to proof at trial.

## SEVENTH COUNT

### (Infringement of U.S. Patent No. 10,153,886)

81. Atlas incorporates by reference the allegations set forth in Paragraphs 1-80 of this Complaint as though fully set forth herein.

82. The '886 Patent, entitled "Apparatus and Method for Downlink and Uplink Multi-User Transmissions," was duly and lawfully issued on December 11, 2018. Atlas is the owner of all right, title, and interest in the '886 Patent. The '886 Patent was filed on November 15, 2016 as Application No. 15/352,435 as a continuation of Application No. 15/078,920, filed on March 23, 2016 (which resulted in U.S. Patent No. 9,531,520), and further claims the benefit of U.S. Provisional Application No. 62/140,349, filed on March 30, 2015, and U.S. Provisional Application No. 62/137,138, filed on March 23, 2015. *See* https://patentimages.storage.googleapis.com/a4/f0/b1/13636bb6f9836a/US10153886.pdf.

83. The '886 Patent is directed to important improvements related to triggering mechanisms for soliciting and scheduling multi-user uplink transmissions that were first implemented in 802.11ax. As noted above, Newracom was a key contributor to the concepts and implementation details of triggering frames. The '886 Patent recites both method and apparatus claims directed to a receiving station device, in which the station receives a downlink frame from an access point and identifies scheduling information in the MAC header of the downlink frame that solicits an uplink response frame from the station. In response to receipt of the scheduling information in the MAC header of the downlink frame, the receiving device generates an uplink response that includes a single high efficiency long training (HE-LTF) field that consists of a single OFDM symbol and transmits the uplink response frame using the scheduling information provided in the downlink frame.

84. OnePlus directly infringes the '886 Patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States products that directly infringe the '886 Patent, including the above identified Accused Products. The Accused Products infringe at least claim 9 of the '886 Patent by practicing the 802.11ax Standard, as indicated in OnePlus' product specifications for the Accused Products. The OnePlus Accused

Products operate as Station devices that are designed by OnePlus and operate consistent with the requirements of 802.11ax.

85. OnePlus also indirectly infringes certain claims of the '886 Patent. Where acts constituting direct infringement of the '886 Patent may not be performed by OnePlus, such acts constituting direct infringement of the '886 Patent are performed by OnePlus' customers or end-users who act at the direction and/or control of OnePlus, with OnePlus' knowledge.

86. Atlas is informed and believes, and on that basis alleges, that OnePlus indirectly infringes at least claim 9 of the '886 Patent by active inducement in violation of 35 U.S.C. § 271(b), by at least manufacturing, supplying, distributing, selling, and/or offering for sale the Accused Products to their customers with the knowledge and intent that use of those products would constitute direct infringement of the '886 Patent. Upon information and belief, OnePlus intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, reseller partners, solution partners, consumers, and other related service providers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, User Manuals, https://www.oneplus.com/support/manuals (last visited Nov. 19, 2021) (providing consumers access to user manuals "that will guide [consumers] through everything [they] need to know about" for the Accused Products).

87. For example, OnePlus advertises to its customers that it sells products that implement the 802.11ax Standard. *See, e.g.*, https://www.oneplus.com/9-pro/specs. OnePlus also instructs its customers on how to connect the Accused Products to Wi-Fi networks so that they may practice the 802.11ax Standard. As an example, the "OnePlus 9 Pro User Manual" assists users in connecting to a wireless network as part of the process for setting up the device. *See* OnePlus 9

Pro              User              Manual              *available*              *at*
https://oneplussupport.s3.amazonaws.com/9+Pro+UM/OnePlus+9+Pro+User+Manual_EN.pdf.
Once the Accused Products are installed, they will automatically implement the 802.11ax Standard
based upon the hardware and software provided in the Accused Products. OnePlus also instructs
its customers on what to do when an Accused Product "Can't Connect to a Wi-Fi Network."
https://www.oneplus.com/support/answer/detail/op314.

88. OnePlus' acts of infringement have cause damage to Atlas, and Atlas is entitled to recover
from OnePlus (or any successor entity to OnePlus) the damages sustained by Atlas as a result of
OnePlus' wrongful acts in an amount subject to proof at trial.

## EIGHTH COUNT

### (Infringement of U.S. Patent No. 10,756,851)

89. Atlas incorporates by reference the allegations set forth in Paragraphs 1-88 of this
Complaint as though fully set forth herein.

90. The '851 Patent, entitled "Multiplexing Acknowledgment Messages in Response to
Downlink Frames," was duly and lawfully issued on August 25, 2020. Atlas is the owner of all
right, title, and interest in the '851 Patent. The '851 Patent was filed on November 28, 2018 as
Application No. 16/203,501 as a continuation of Application No. 15/151,433, filed on May 10,
2016 (which resulted in U.S. Patent No. 10,181,930), and further claims the benefit of U.S.
Provisional Application No. 62/193,305, filed on July 16, 2015, U.S. Provisional Application No.
62/191,623, filed on July 13, 2015, U.S. Provisional Application No. 62/160,527, filed on May 12,
2015, and U.S. Provisional Application No. 62/159,346, filed on May 10, 2015. *See*
https://patentimages.storage.googleapis.com/f0/f1/7d/15808407b884d4/US10756851.pdf.

91. The '851 Patent generally relates to a wireless communication system in which a plurality
of acknowledgement messages from multiple station devices are multiplexed and transmitted
simultaneously in response to multi-user downlink frames. The multi-user downlink transmission
includes a control extension in a control field that includes scheduling information used by a

plurality of station devices for the multi-user uplink acknowledgement. More specifically, the control extension includes scheduling information for a trigger-based response.

92. OnePlus directly infringes the '851 Patent under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States products that directly infringe the '851 Patent, including the above identified Accused Products. The Accused Products infringe at least claim 1 of the '851 Patent by practicing the 802.11ax Standard, as indicated in OnePlus' product specifications for the Accused Products. The OnePlus Accused Products operate as Station devices that are designed by OnePlus and operate consistent with the requirements of 802.11ax.

93. OnePlus also indirectly infringes the '851 Patent claims. Where acts constituting direct infringement of the '851 Patent may not be performed by OnePlus, such acts constituting direct infringement of the '851 Patent are performed by OnePlus' customers or end-users who act at the direction and/or control of OnePlus, with OnePlus' knowledge.

94. Atlas is informed and believes, and on that basis alleges, that OnePlus indirectly infringes at least claim 1 of the '851 Patent by active inducement in violation of 35 U.S.C. § 271(b), by at least manufacturing, supplying, distributing, selling, and/or offering for sale the Accused Products to their customers with the knowledge and intent that use of those products would constitute direct infringement of the '851 Patent. Upon information and belief, OnePlus intends to cause, and has taken affirmative steps to induce, infringement by importers, online stores, distribution partners, retailers, reseller partners, solution partners, consumers, and other related service providers by at least, *inter alia*, creating advertisements that promote the infringing use of the Accused Products, creating and/or maintaining established distribution channels for the Accused Products into and within the United States, manufacturing the Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing wireless networking features in the Accused Products, and/or providing technical support, replacement parts, or services for these products to purchasers in the United States. *See, e.g.*, User Manuals, https://www.oneplus.com/support/manuals (last

visited Nov. 19, 2021) (providing consumers access to user manuals "that will guide [consumers] through everything [they] need to know about" for the Accused Products).

95. For example, OnePlus advertises to its customers that it sells products that implement the 802.11ax Standard. *See, e.g.*, https://www.oneplus.com/9-pro/specs. OnePlus also instructs its customers on how to connect the Accused Products to Wi-Fi networks so that they may practice the 802.11ax Standard. As an example, the "OnePlus 9 Pro User Manual" assists users in connecting to a wireless network as part of the process for setting up the device. *See* OnePlus 9 Pro        User        Manual        *available        at* https://oneplussupport.s3.amazonaws.com/9+Pro+UM/OnePlus+9+Pro+User+Manual_EN.pdf. Once the Accused Products are installed, they will automatically implement the 802.11ax Standard based upon the hardware and software provided in the Accused Products. OnePlus also instructs its customers on what to do when an Accused Product "Can't Connect to a Wi-Fi Network." https://www.oneplus.com/support/answer/detail/op314.

96. OnePlus' acts of infringement have cause damage to Atlas, and Atlas is entitled to recover from OnePlus (or any successor entity to OnePlus) the damages sustained by Atlas as a result of OnePlus' wrongful acts in an amount subject to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and seeks relief against OnePlus as follows:

(a) For judgment that U.S. Patent Nos. '259, '738, '442, '513, '679, '919, '886, and '851 have been and continue to be infringed by OnePlus;

(b) For an accounting of all damages sustained by Plaintiff as the result of OnePlus' acts of infringement;

(c) For finding that OnePlus' infringement is willful and enhancing damages pursuant to 35 U.S.C. § 284;

(d) For a mandatory future royalty payable on each and every future sale by OnePlus of a product that is found to infringe one or more of the Asserted Patents and on all future products that are not colorably different from products found to infringe;

(e)  For an award of attorneys' fees pursuant to 35 U.S.C. § 285 or otherwise permitted by law;

(f)  For all costs of suit; and

(g)  For such other and further compensatory relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule CV-38, Plaintiff demands a trial by jury of this action.

Dated: November 22, 2021                    Respectfully submitted,

                                            /s/ *Michael F. Heim*
                                            Max L. Tribble, Jr.
                                            Texas State Bar No. 20213950
                                            Joseph S. Grinstein
                                            Texas State Bar No. 24002188
                                            Alejandra C. Salinas
                                            Texas State Bar No. 24102452
                                            **SUSMAN GODFREY, LLP**
                                            1000 Louisiana Street, Suite 5100
                                            Houston, Texas 77002
                                            Telephone: (713) 651-9366
                                            Facsimile: (713) 654-6666
                                            mtribble@susmangodfrey.com
                                            jgrinstein@susmangodfrey.com
                                            asalinas@susmangodfrey.com

                                            Kalpana Srinivasan
                                            California State Bar No. 237460
                                            Oleg Elkhunovich
                                            California State Bar No. 269238
                                            **SUSMAN GODFREY, LLP**
                                            1900 Avenue of the Stars, 14th Floor
                                            Los Angeles, CA 90067
                                            Telephone: (310) 789-3100
                                            Facsimile: (310) 789-3150
                                            ksrinivasan@susmangodfrey.com
                                            oelkhunovich@susmangodfrey.com

                                            Michael F. Heim
                                            Texas State Bar No. 09380923
                                            Eric J. Enger
                                            Texas State Bar No. 24045833
                                            Blaine A. Larson
                                            Texas State Bar No. 24083360
                                            Alden G. Harris
                                            Texas State Bar No. 24083138
                                            William B. Collier, Jr.
                                            Texas State Bar No. 24097519
                                            **HEIM, PAYNE & CHORUSH, LLP**
                                            1111 Bagby, Suite 2100
                                            Houston, Texas 77002
                                            Telephone: (713) 221-2000
                                            Facsimile: (713) 221-2021
                                            mheim@hpcllp.com

34

eenger@hpcllp.com
blarson@hpcllp.com
aharris@hpcllp.com
wcollier@hpcllp.com


*ATTORNEYS      FOR      ATLAS      GLOBAL
TECHNOLOGIES LLC*